(February 7, 1924.)

POCATELLO INDEPENDENT SCHOOL DISTRICT NUMBER ONE, BANNOCK COUNTY, a Municipal Corporation, Respondent, v. LYMAN FARGO, D. W. CHURCH, LILA FRANKLIN, Executrix, CLARENCE E. FRANKLIN, Executor, W. F. KASISKA and E. C. WHITE, Appellants.

[223 Pac. 232.]

DEPOSIT OF PUBLIC MONEYS—DEPOSITARY LAW—CONTRACT OF SURETYSHIP—LIABILITY—ACCEPTANCE—MUTUALITY—ESTOPPEL.

1. Under the provisions of C. S., sec. 845, relating to the qualification and organization of a board of trustees of an inde-

pendent school district, the power to designate a depositary of the funds of the district is necessarily implied from the powers granted to such trustees.

2. There is nothing in the statutes of this state which prohibits the trustees of an independent school district from selecting a bank as a depositary of its funds.

3. Where under the designation of a bank as a depositary of public moneys a bond is accepted and such moneys are deposited for a period of several years without any question being raised as to the legality of such designation, neither the bank nor the sureties can thereafter be heard to question its sufficiency.

4. *Held,* that the sureties on the depositary bond in question in this case are estopped and precluded by the recitals in their bond from making the defense that the designation of a depositary by the trustees of the plaintiff independent school district was invalid, and not a proper consideration for the execution of the bond.

5. *Held,* that the deposit of the funds of the plaintiff independent school district with the Bannock National Bank constituted sufficient consideration for the contract of suretyship, and that the defense of lack of mutuality of contract is not available to the indemnitors on the bond.

6. Where a bank designated as depositary of public funds by the trustees of an independent school district delivered the statutory bond to the proper officer of the district and the district commenced to make deposits in the bank, the intention of the district to accept the bond was thereby evidenced and the contract of suretyship became complete. No further indication of acceptance or approval was necessary.

APPEAL from the District Court of the Fifth Judicial District, for Bannock County. Hon. B. S. Varian, Presiding Judge.

Action by plaintiff Independent School District to recover on a depositary bond. From a judgment for plaintiff, defendants appeal. *Affirmed.*

H. B. Thompson, for Appellants.

Trustees of a school district have no powers except such as are conferred by legislative act either expressly or by necessary implication, and doubtful claims of power are resolved against them. They have special powers and can-

not exceed them. (24 R. C. L. 569; *Crawford v. District School Board,* 68 Or. 388, Ann. Cas. 1915C, 477, 137 Pac. 217, 50 L. R. A., N. S., 147; *Dooley v. Board of Education,* 80 W. Va. 648, 93 S. E. 766.)

The only implied powers which can be conceded to a school district are such as are reasonably necessary to enable it to exercise its powers expressly granted. (*Olmstead v. Carter,* 34 Ida. 276, 200 Pac. 134; *School District No. 8, Twin Falls County, v. Fire Ins. Co.,* 30 Ida. 400, 164 Pac. 1174.)

Unless a contract of a school district is within the power of the district to make, and binding upon it, it is not binding upon the other party thereto, or upon his surety. (*School Dist. No. 8, Twin Falls County, v. Fire Ins. Co., supra; City of Portland v. Portland Bituminous Paving etc. Co.,* 33 Or. 307, 52 Pac. 28; Dillon, Municipal Corp., sec. 830; McQuillin, Municipal Corp., sec. 1256; *City of Pocatello v. Fidelity & Deposit Co. of Maryland,* 267 Fed. 187.)

Jones, Pomeroy & Jones, for Respondent.

The statutory duty of a treasurer to safely keep and to account for public moneys is not inconsistent with the rights of a subordinate legislative body to designate a depositary, even though such power is not expressly conferred, if it can be fairly implied from the powers expressly granted. (18 C. J. 583; *City of Newburgh v. Dickey,* 164 App. Div. 791, 150 N. Y. Supp. 175; *Stephens v. City of Ludlow,* 159 Ky. 729, 169 S. W. 473.)

Sureties are estopped from denying the recitals in the instrument they sign. (*State v. McDonald,* 4 Ida. 468, 95 Am. St. 137, 40 Pac. 312; *Talley v. State,* 121 Ark. 4, 180 S. W. 330.)

The bank and its sureties are estopped to deny that there had never been a designation of the bank as such depositary. (*Hennepin County v. State Bank,* 64 Minn. 180, 66 N. W. 143; *State v. United States F. & G. Co.,* 81 Kan. 660, 106 Pac. 1040, 26 L. R. A., N. S., 1065; *Jefferson v. McCarty,* 44 Minn. 26, 46 N. W. 140.)

If a contract is accepted through performance no objection can be made to it for want of mutuality. (Page on Contracts, sec. 582; 9 Cyc. 391.)

Depositing school moneys with a bank constitutes sufficient consideration. (*Board of Commrs. v. American Loan & Trust Co.*, 75 Minn. 489, 78 N. W. 113; *Perkins v. State*, 130 Miss. 512, 94 So. 460.)

No formal acceptance of a bond is required in order to justify a recovery. Any act or thing by which it may be indicated that the bond was delivered and accepted is sufficient. (Mechem's Public Offices and Officers, secs. 311–313; *Estate of Ramsey v. People*, 197 Ill. 572, 90 Am. St. 180, 64 N. E. 549; *Wylie v. Commercial & Farmers' Bank*, 63 S. C. 406, 41 S. E. 504.)

Even . though a contract with a municipal corporation be *ultra vires*, yet it is not illegal if not prohibited by its charter. (*Perkins v. State, supra; State v. United States Fidelity & G. Co., supra;* 26 L. R. A., N. S., 865.)

ADAIR, District Judge.—This action was instituted by the plaintiff against the defendants to recover certain moneys standing to the credit of the plaintiff school dis-. trict with the Bannock National Bank, at the time said bank became insolvent and was closed by the comptroller of the currency. The defendants were sureties upon a depositary bond given by said bank to the school district for the purpose of protecting said district from loss resulting from the deposit of its funds in said bank. The evidence in the main is undisputed, and the essential parts thereof, briefly summarized, are as follows:

Prior to December 20, 1915, all of the funds of said school district were deposited with the First National Bank. On that date D. W. Church, one of the appellants herein, as cashier of the Bannock National Bank submitted a written bid to the school trustees offering to pay, for said bank, three per cent for the use of the funds of the district which might be allotted to said bank. On December 21, 1915, at a meeting of the trustees, this proposal, together with those

of various other banks of Pocatello, was considered and it was determined to accept said bids, and that when bonds had been accepted and approved by the board, the treasurer of the district should divide the money equally among these banks. At a meeting held on January 12, 1916, it was moved and carried that the chairman and secretary of the board of trustees investigate the qualifications of each surety (bonds having previously been tendered) and if said sureties were found to be in compliance with law that the bonds be approved, and that when the bonds were so approved by the chairman and secretary, the district money then be equally divided among the banks mentioned in the motion. On or about January 13, 1916, the said officers named in said resolution, together with the other members of the board, except two who were not present, went to the courthouse, and made an investigation as to the property holdings of the proposed sureties, and as shown by the oral testimony, such investigation satisfied these officers as to the sufficiency of said sureties, and the bond was then and there approved, and it was taken by the clerk and placed in the vault of said district where it thereafter remained. No other formal action by the board, as such, relative to the approval of the bond in question, was taken at that time, although subsequently it was from time to time examined and approved by the board.

On January 17, 1916, the sum of $17,559.13 was transferred from the First National Bank to said Bannock National Bank, which bank thereafter up to the time it closed, continued to carry deposits in various amounts of the funds of said district. No new bond was ever taken, but these deposits were all made in reliance upon the bond above mentioned. The bank failed on May 12, 1921.

At the time of the execution and delivery of the bond the defendant Church was a stockholder in said Bannock National Bank, and continued to be so until the present time, being then a director and the cashier. The defendant Franklin at that time was a stockholder and director. He ceased to be a stockholder on April 30, 1921. The defend-

ant Kasiska, at the date of the execution of the bond, was and ever since has been a stockholder but never was a director or officer of said bank. The defendant White at the time of the giving of said bond was a stockholder but sold his stock in February, 1918. On January 10, 1921, he repurchased some stock therein, which he retained at the date of the trial. He was a director at the time the bank closed. The defendant Fargo was a stockholder, director and the president of the bank at the time of the execution of the bond, but ceased to own any shares of stock in said bank about January 21, 1918.

The trial court found that on the 21st day of December, 1915, the Bannock National Bank was, according to law, selected and designated as an official depositary of the plaintiff; that the defendants executed the bond sued upon; that on January 17, 1916, in consideration of the making and delivery of said bond and in reliance thereon, plaintiff made its first deposit on checking account with said bank, and had continuously maintained its deposit with the bank as an official depositary until the month of May, 1921; that the said bank was an official depositary and the bond in full force and effect from January 17, 1916, up to the time that the bank closed its doors; and found that there was due the plaintiff the amount demanded in its complaint, and rendered judgment accordingly. From such judgment this appeal is prosecuted.

A depositary of public funds may be defined as a person, real or artificial, designated by law, with whom public officials may or shall leave for safekeeping, public funds. The weight of authority is to the effect that if there is an authorized deposit of public money with such depositary there results the relation of debtor and creditor, and it has been frequently held that this relation exists even where the deposit was not specifically authorized by law. In the case of *Rugby Board of Education v. Nelson*, 33 N. D. 462, 157 N. W. 664, in discussing the question as to whether an officer was relieved from responsibility by reason of having made a certain deposit, the court said: ''That the

relation of debtor and creditor arose from the deposit with the bank, no matter how irregular the designation, or without a designation, so long as the deposit was made upon the order of the board, there can be no doubt."

The provisions of article 4, title 7, C. S., relative to independent school districts do not in express terms authorize trustees of such a district to designate a depositary. However, such boards do have supervisory authority over the treasurer of the district, as well as over the other officers thereof, and we think that the power to designate a depositary is necessarily inferred from the powers granted to such trustees. C. S., sec. 845, relative to the qualifications and organization of the board, among other things provides that the board "from their number shall select a chairman, a clerk and a treasurer, or they may elect as treasurer some competent and responsible person who is not a trustee, and said treasurer shall be required to deposit the school moneys in such bank or banks as will pay the highest rate of interest on daily balances, dividing the money to two or more banks if the same offer the same rates of interest," etc.

The clause in this statute, that the treasurer "shall be required to deposit school moneys," implies by its terms that the trustees shall have the right to designate the bank or banks in which such deposits shall be made. It is not left entirely to the caprice of the treasurer, but he must safely keep these funds in such banks as the trustees shall name. While the statute requires the trustees to select a treasurer for the district, whose duty it would be to keep and account for the public moneys, still it is not inconsistent with his rights and duties that the trustees should themselves designate the depositary, even though this power is not expressly conferred on them by statute, if it can be fairly implied from the powers expressly granted to them. (*Stephens v. City of Ludlow*, 159 Ky. 729, 169 S. W. 473; *City of Newburgh v. Dickey*, 164 App. Div. 791, 150 N. Y. Supp. 175; 18 C. J. 583.) Having in mind the powers expressly conferred upon the trustees generally, in the administration of the affairs of the school district, it is

reasonable to hold that the board of trustees itself has the power to select the depositary. That is the interpretation which the board of this district placed upon the law, and followed for years. This construction of the statute is logical and correct.

The contract of a municipal corporation is not illegal, if not prohibited by law, even though such contract be *ultra vires.* (*State v. United States Fidelity & Guaranty Co.,* 81 Kan. 660, 106 Pac. 1040, 26 L. R. A., N. S., 865.)

"Although a contract with a municipal corporation may be *ultra vires,* still it is not illegal if not prohibited by its charter. . . . . And sureties thereon cannot escape liability on such bond on that ground, provided the bank which is selected as such depositary gets the benefit of such bond by acting as the actual depositary for such municipality." (*Perkins v. State ex rel. Robertson,* 130 Miss. 512, 94 So. 460.)

There is nothing in the statutes of this state which prohibits the trustees of an independent school district from selecting a depositary of its funds. We therefore hold that the designation of the Bannock National Bank, by the trustees of the respondent district was not illegal and void, but was done in conformity with the implied powers of such trustees.

This construction which we have placed upon C. S., sec 845, is not inconsistent with the previous decisions of this court to the effect that a school district does not possess implied powers except such as are reasonably necessary to enable it to exercise the powers expressly granted. (*Olmstead v. Carter,* 34 Ida. 276, 200 Pac. 134.)

The bond recites that said bank "was on the 21st day of Dec., 1915, duly selected and designated by resolution passed and approved on the 21st day of Dec., 1915, as the official depositary of the Pocatello Independent School District #1, for the purpose of receiving and safe keeping of all of the funds of the Pocatello Independent School District #1, deposited with the said Bannock National Bank.

"Now, if the said Bannock National Bank, from the 6 day

of Jan., 1916, to and during the time that the said bank continues to be the official depositary," etc.

"The bond in question, if not in strict compliance with the statute, has all the elements and binding force of a common-law obligation, and, the bank having by means of the bond secured possession of the state funds, neither it nor the surety can escape liability for nonperformance of the conditions of the bond."

"The surety of the defaulting bank is estopped to deny the facts recited in the bond, including the recital that the bank was duly designated." (*State v. United States Fidelity & Guaranty Co., supra.*)

The recitals in the bond are conclusive between the parties to the contract. (*Jefferson v. McCarthy*, 44 Minn. 26, 46 N. W. 140; *Hennepin County v. State Bank*, 64 Minn. 180, 66 N. W. 143; *State v. McDonald*, 4 Ida. 468, 95 Am. St. 137, 40 Pac. 312.)

Neither the bank nor the sureties can be heard to question the sufficiency of the designation. The bond was accepted and under the designation made by the trustees funds were deposited in the bank for a period of several years without any question as to the legality of such designation.

"If a depositary, although not regularly appointed, assumes to act as a depositary, and is recognized as such, and receives and holds the public funds under a designation and bond, it is at least a *de facto* depositary." (*Snattinger v. City of Topeka*, 80 Kan. 341, 102 Pac. 508.)

"It was not necessary to show a legal designation of the trust company as a depositary. It was sufficient to show that the trust company was a *de facto* depositary, and that the deposits were made in reliance upon the bond." (*Board of Commrs. St. Louis County v. American Loan & Trust Co.*, 75 Minn. 489, 78 N. W. 113.)

To like effect, *Board of County Commrs. v. State Bank*, 64 Minn. 180, 66 N. W. 143; *Board Commrs. v. Gray*, 61 Minn. 242, 63 N. W. 635.

Even though the trustees of the respondent were without authority in law to designate a depositary, these appellants

are estopped and precluded by the recitals in their bond, from making the defense in this action that such designation was invalid and not a proper consideration for the execution of the bond.

It is contended that there was no mutuality of contract between the plaintiff and the bank, and that as a consequence there was no consideration for the bond herein sued upon.

"If the contract is accepted by doing the act, no objection can be made to the contract upon the ground of want of mutuality. The same act amounts to acceptance, consideration, and performance. In terms of mutuality this is explained by saying that performance has eliminated the original want of mutuality, and as far as such contract has been performed, the rights of the parties are to be measured by its terms." (Page on Contracts, sec. 582, p. 985.)

The depositing of the moneys of the plaintiff district with the bank constituted sufficient consideration for the bond. (*Board of Commrs. St. Louis County v. American Trust Co., supra.*) In view of the facts in this case the defense of lack of mutuality of contract is not available to the appellants.

Appellants also contend that there is no evidence that the bond was legally accepted and approved and that its obligations would not be binding upon them prior to such approval and acceptance. The evidence shows that this is the only bond ever given by the Bannock National Bank to this respondent school district. After it was tendered, the chairman and clerk of the board, together with two other trustees, went to the courthouse to investigate the tax rolls in connection with the assessable property of these sureties, and after such examination the bond was approved by the officers present and afterwards under the direction of the clerk was placed in the vault in the office of the board. This was done prior to the making of the first deposit with the bank. The bond was thereafter kept in the vault, but from time to time, during the period inter-

vening between its delivery and the failure of the bank, it was examined by members of the board and found to be satisfactory, although no minute of the action of the board appears, wherein it was formally declared approved. The bond was always relied upon as security for the deposits made.

It is true that a board of trustees is an entity and can only act as empowered by law and collectively. (*Miller v. Smith,* 7 Ida. 204, 61 Pac. 824.) Such a board cannot delegate to some of its members individually the right to act for and bind it in the performance of discretionary or *quasi*-judicial functions or duties. Were there no other acts in this case relative to the approval of the bond than those at the courthouse when the board was not in regular session and only four of the trustees present, the question of the sufficiency of the approval of the bond might be doubtful. This incident is not important, or conclusive, however, in the light of all the facts and subsequent acts of the parties.

"Where the bond is in the possession of the obligee such fact is *prima facie* evidence of delivery, and also of acceptance. And approval . . . . may be shown by presumptive evidence." (5 Cyc. 846, 847.)

The bond was accepted and no particular manner of indicating its acceptance or approval is necessary. When the bank delivered the bond, and the district commenced to make deposits in the bank, the intention of the respondent district to accept the same was evidenced, and the contract was complete and the obligation binding.

"No formal acceptance of an official bond is required in order to justify a recovery upon it against the sureties, nor is it necessary that there should be written evidence of its acceptance and approval, in order to bind the sureties. Parol evidence is admissible to show its approval." (17 Am. & Eng. Ency. of Law, 1st ed., 64; *Bank of United States v. Dandridge,* 12 Wheat. (U. S.) 64, 6 L. ed. 552; *Bartlett v. Board of Education,* 59 Ill. 364; Mechem's Public Offices and Officers, secs. 311–313; *Estate of Ramsey v.*

*People,* 197 Ill. 572, 90 Am. St. 180, 64 N. E. 549; *Wylie v. Commercial & Farmers' Bank,* 63 S. C. 406, 41 S. E. 504; 4 R. C. L. 48, 49; C. S., sec. 433.)

This bond was given for the purpose of protecting the funds of the plaintiff district and to enable the bank to secure the use of those funds. The indemnitors on the bond were willing to guarantee the safekeeping and return of the money deposited thereunder. They were at the time all stockholders and most of them directors and officers of the bank. They were charged with knowledge of the law. They knew that the bond was given in order to comply with the requirements of the law and the resolution of the board designating the bank as a depositary. They undertook to insure the return of those public funds and they cannot be heard now to deny their liability. They are estopped from so doing.

We find no error in the record and the judgment is affirmed. Costs are awarded to the respondent.

McCarthy, C. J., and Dunn, William A. Lee and Wm. E. Lee, JJ., concur.